1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   SAJAK SHAKOOR,

11           Petitioner,              No. CIV S-01-1551 LKK JFM P

12       vs.

13   GAIL LEWIS, et al.,

14           Respondents.             FINDINGS & RECOMMENDATIONS

15   _____/

16           Petitioner is a state prisoner proceeding pro se with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 1998 conviction on

18   charges of assault with a deadly weapon or force likely to produce great bodily injury, in

19   violation of Cal. Pen. Code § 245(a)(1).  He seeks relief on the grounds that: (1) there was

20   insufficient evidence to support his conviction; (2) jury instruction error violated his due process

21   rights; (3) his sentence constitutes cruel and unusual punishment; and (4) he received ineffective

22   assistance of counsel.  Upon careful consideration of the record and the applicable law, the

23   undersigned will recommend that petitioner's application for habeas corpus relief be denied.

24   /////

25   /////

26   /////

FACTUAL AND PROCEDURAL BACKGROUND[1]

A jury convicted [petitioner] Sajad Shakoor of burglary (Pen. Code, §§ 459, 460 (hereafter all undesignated section references are to the Penal Code]) and assault by means of force likely to produce great bodily injury (§245, subd. (a)(1)). [Petitioner] admitted four prior serious felony convictions within the meaning of sections 1170.12, subdivision (b) and 667, subdivision (d), the service of a one (sic) prior prison term within the meaning of section 667.5, subdivision (b)), and one serious prior felony conviction within the meaning of section 667, subdivision (a).

At [petitioner's] sentencing hearing the court granted his motion for acquittal of the burglary conviction based upon insufficiency of the evidence. The court also struck the enhancements for service of a prior prison term (§667.5, subd. (b)) and serious prior felony conviction (§667, subd. (a)). The court then imposed a term of 25 years to life for the felony assault.

* * *

Sam Tanguileg and Salvadore Tapia lived next door to each other and were close friends. Tenguileg introduced [petitioner] to Tapia, and Tapia and [petitioner] began "hanging around" together.

A few weeks prior to September 2, 1997, the date of the instant offense, Tapia and [petitioner] were at a party where Tapia introduced [petitioner] to Alicia Cortez. According to Tapia, Cortez was Tanguileg's ex-girlfriend; according to [petitioner] Cortez was still Tanguileg's girlfriend. Tanguileg was not present at the party and Tapia ended up sleeping with Cortez. A couple of days before September 2, Tapia had a small party at his apartment, which was in the garage of his parents home. Tapia and [petitioner] got into an argument and [petitioner] said he was going to tell Tanguileg of Tapia's involvement with Cortez.

On September 2, about 8 p.m., in response to a knock, Tapia opened his door and saw Tanguileg. Tapia returned to where he had been siting, and Tanguileg, followed by [petitioner] and three juveniles, entered. [Petitioner] told one of the juveniles to "Turn up" the stereo. [Petitioner] informed Tapia that he had told Tanguileg about Tapia's relationship witn Cortez. When Tapia tried to leave he was struck from behind. All of the others, except for [petitioner], began beating Tapia with their hands and feet, striking him from 10 to 20 times. During the beating Tanguileg obtained a metal bar, which Tapia used as a security device for his

[1] This statement of facts is taken from the February 28, 2000 opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), at pgs. 1-4, appended as Exhibit D to Respondents' Answer, filed on August 29, 2003.

door, and struck Tapia with it 20 to 30 times.  The beating stopped when Tapia began screaming, causing his attackers and [petitioner] to flee.[2]

Tapia's injuries included seven deep lacerations to his scalp, bruises to his nose and lip, abrasion on his back, and multiple fractures to his fingers.

Following [petitioner's] arrest the next day, he told Detective Fernando Martinez that he was at a park on September 2, and told Tanguileg and "all the homeboys" of Tapia's sexual involvement with Cortez.  [Petitioner], accompanied by Tanguileg and three juveniles, got into [petitioner's] car and left the area.  They eventually drove to Tapia's "because he had a beating coming." [Petitioner] said that he did not participate in the beating because it was not his fight – he was there only so that Tapia would know why he was being beaten up.  [Petitioner] also said that his understanding was that Tapia was only to be struck by feet and fists.

Two of the juveniles testified, admitting that while they were driving around with [petitioner] and Tanguileg they discussed beating up Tapia; however, [petitioner] did not participate in these discussions.

[Petitioner] testified, admitting he knew Tanguileg was upset over [petitioner's] having told Tanguileg about Tapia and Cortez. However, [petitioner] claimed that he did not know Tanguileg intended to hurt Tapia.  Instead, he believed that when they went to Tapia's apartment, Tanguileg was only going to discuss the matter with Tapia.

(People v. Sajad Shakoor, et al., slip op. at 1-4.)

ANALYSIS

I.  Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[2] Tapia admitted telling a police officer that he had seen [petitioner] with a gun that evening.  However, at trial he testified that he did not see [petitioner] with a gun and that he meant he had seen him with a gun on a prior occasion.

1        (2) resulted in a decision that was based on an unreasonable
2    determination of the facts in light of the evidence presented in the
     State court proceeding.

3    28 U.S.C. § 2254(d).

4            Under section 2254(d)(1), a state court decision is "contrary to" clearly

5    established United States Supreme Court precedents "if it 'applies a rule that contradicts the

6    governing law set forth in [Supreme Court] cases', or if it 'confronts a set of facts that are

7    materially indistinguishable from a decision'" of the  Supreme Court and nevertheless arrives at

8    different result.  Early v. Packer, 573 U.S. 3, 8 (2002) (quoting Williams v. Taylor, 529 U.S. 362,

9    405-406 (2000)).

10           Under the  "unreasonable application" clause of section 2254(d)(1), a federal

11   habeas court may grant the writ if the state court identifies the correct governing legal principle

12   from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

13   prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ

14   simply because that court concludes in its independent judgment that the relevant state-court

15   decision applied clearly established federal law erroneously or incorrectly.  Rather, that

16   application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75

17   (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

18   question, is left with a 'firm conviction' that the state court was 'erroneous.'")

19           The court looks to the last reasoned state court decision as the basis for the state

20   court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court

21   reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

22   habeas court independently reviews the record to determine whether habeas corpus relief is

23   available under section 2254(d).  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

24   /////

25   /////

26   /////

4

1  II.  Petitioner's Claims

2      A.  Sufficiency of the Evidence

3          Petitioner's first claim is that his Fourteenth Amendment due process rights were

4  violated because there was insufficient evidence to support his conviction on the assault charge.

5  Specifically, he argues that the evidence was insufficient to demonstrate that the assault was the

6  natural and probable consequence of his intent to commit a simple battery.  (Petition filed

7  November 20, 2003 (Pet.) at 5.)  This claim was rejected by the California Court of Appeal in a

8  written decision on petitioner's direct appeal, and by the California Supreme Court without

9  comment on petition for review.  (See Exs. D, E, F to Answer.)

10         There is sufficient evidence to support a conviction if, "after viewing the evidence

11  in the light most favorable to the prosecution, any rational trier of fact could have found the

12  essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307,

13  319 (1979).  See also Prantil v. California, 843 F.2d 314, 316 (9th Cir. 1988) (per curiam).  "Put

14  another way, the dispositive question under Jackson is 'whether the record evidence could

15  reasonably support a finding of guilt beyond a reasonable doubt.'"  Chein v. Shumsky, 373 F.3d

16  978, 982 (9th Cir. 2004) (quoting Jackson, 443 U.S. at 318).[3]  The court must review the entire

17  record when the sufficiency of the evidence is challenged in habeas proceedings.  Adamson v.

18  Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th

19  Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987).  It is the province of the jury to "resolve conflicts

20  in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to

21  ultimate facts."  Jackson, 443 U.S. at 319.  "The question is not whether we are personally

22  convinced beyond a reasonable doubt.  It is whether rational jurors could reach the conclusion

23

24          [3]  The Ninth Circuit Court of Appeals has declined to consider the question of whether
   the AEDPA requires an additional degree of deference to state courts' resolution of sufficiency of
25  the evidence claims.  See Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004);  Chein v.
   Shumsky, 373 F.3d 978, 983 (9th Cir. 2004).  Because petitioner's claim fails under the Jackson
26  standard this court also need not decide whether the enactment of the AEDPA altered that test for
   purposes of federal habeas proceedings.

1   that these jurors reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).  The federal

2   habeas court determines sufficiency of the evidence in reference to the substantive elements of

3   the criminal offense as defined by state law.  Jackson, 443 U.S. 307, 324 n.16; Chein, 373 F.3d at

4   983 .

5        The California Court of Appeal rejected petitioner's claim of insufficient evidence

6   as follows:

7        The jury was instructed, among other theories, that they could find
         [petitioner] guilty of the crime of assault with a deadly weapon or
8        by means of force likely to produce great bodily injury as an aider
         and abettor.  The jury was further instructed that, if they found that
9        the original plan that the [petitioner] intended to aid and abet was a
         simple battery, then to convict [petitioner] of the felony assault
10       crime they must find that the felony assault was the natural and
         probable consequence of the crime of battery.

11

12       [Petitioner] concedes the evidence was sufficient to support the
         theory that he aided and abetted a simple battery.  However, he
13       contends that under the facts of this case the evidence was not
         sufficient to show that an assault by means of force likely to
         produce great bodily injury was a natural and probable
14       consequence of the intended battery.  He is wrong.

15       The determination whether a particular criminal act was a natural
         and probable consequence of another criminal act aided and
16       abetted by a [petitioner] requires application of an objective rather
         than subjective test.  This does not mean that the issue is to be
17       considered in the abstract as a question of law.  Rather, the issue is
         a factual question to be resolved by the jury in light of all of the
18       circumstances surrounding the incident."  (People v. Nguyen
         (1993) 21 Cal.App.4th 518, 531, internal citations omitted.)

19

20       In support of his contention, [petitioner] argues: "In this case there
         was evidence showing that Tapia was severely injured as a result of
21       the beating.  But the evidence also showed that those injuries were
         caused not by hands and fists (i.e., the intended battery) but rather
         were caused by the metal pipe.  And it was clear from the evidence
22       that the metal pipe was already at Tapia's, and that it was only used
         because it was conveniently located where the assault began.
23       Thus, [petitioner] contends that the use of the pipe was what made
         this an assault under Penal Code section 245, and that the use of
24       that pipe was not a natural and probable consequence of the intent
         to commit a simple battery."

25

26       The argument is amiss.  [Petitioner] assumes that because the most
         severe injuries were inflicted by use of the pipe, and because the

use of the pipe may have been an unforeseeable circumstance, and, thus, the assault with the pipe may not have been a natural and probable consequence of the simple assault.  In doing so, he neglects to consider his admission to Detective Martinez as well as the means by which the initial assault was to be accomplished.

By its express terms, all that felony assault requires is that it be committed by means of force "likely" to produce great bodily injury, not that great bodily injury be produced.  Martinez testified [petitioner] told him that when he, Tanguileg and the three others drove to Tapia's apartment that he knew Tapia was going to be beaten, although he believed only hands and fists were going to be used.  Thus, even assuming [petitioner] had no intention of physically participating in the beating, he knew four people intended to beat a single individual by kicking and striking him with their fists.  Since it is reasonably foreseeable that such means may likely result in the infliction of great bodily injury, the felony assault was a natural and probable consequence of the intended battery.

(Opinion at 4-7.)

The state court's conclusion that there was sufficient evidence to establish petitioner's guilt beyond a reasonable doubt is not an unreasonable application of the federal due process standards set forth above.  A reasonable juror could conclude that great bodily injury was the natural and probable consequence of the amount of force petitioner believed would be used on Tapia: a beating inflicted by four men against one man.  Accordingly, this claim should be denied.

### B. Jury Instruction Error

Petitioner raises two claims of jury instruction error.  After setting forth the applicable legal principles, the court will evaluate these claims in turn below.

### 1. Legal Standards

A challenge to jury instructions does not generally state a federal constitutional claim.  See Engle v. Isaac, 456 U.S. 107, 119 (1982); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  In order to warrant federal habeas relief, an error in jury instructions "cannot be merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some due process right guaranteed by the fourteenth amendment."  Prantil, 843 F.2d at 317 (quoting Cupp

1   v. Naughten, 414 U.S. 141, 146 (1973)).  To prevail, petitioner must demonstrate that the

2   erroneous charge "'so infected the entire trial that the resulting conviction violates due process.'"

3   Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp, 414 U.S. at 147).  See also

4   Henderson v. Kibbe, 431 U.S. 145, 154 (1977).  In reviewing an ambiguous instruction, a

5   reviewing court inquires "whether there is a reasonable likelihood that the jury has applied the

6   challenged instruction in a way" that violates the Constitution.  Estelle, 502 U.S. at 72-73

7   (quoting Boyde v. California, 494 U.S. 370, 380 (1990)).  Where a trial court fails "to properly

8   instruct the jury regarding an element of the charged crime," the court commits "a constitutional

9   error that deprives the defendant of due process."  Conde v. Henry, 198 F.3d 734, 740 (9th Cir.

10   1999) (quoting Hennessy v. Goldsmith, 929 F.2d 511, 514 (9th Cir. 1991)).  However, harmless

11   error analysis is ordinarily applied to trial errors, including a jury instruction that omits an

12   element of the offense.  See Neder v. United States, 527 U.S. 1, 8 (1999).

13            2.  CALJIC No. 9.07

14            Petitioner claims that his due process rights were violated when the trial court

15   gave a jury instruction which did not accurately instruct on the intent element of assault.  He

16   argues that the instruction allowed the jury to improperly convict him on a negligence standard.

17            The state court record reflects that petitioner's jury was instructed on the

18   definition of assault with a version of CALJIC No. 9.00 in effect at the time of petitioner's trial.

19   (Clerk's Transcript on Appeal (CT) at 244; Reporter's Transcript on Appeal (RT) at 541.)  With

20   respect to the element of intent, the instruction stated: "A person willfully committed an act

21   which by its nature would probably and directly result in the application of physical force on

22   another person."  (Id.)  In People v. Smith, 57 Cal.App.4th 1470 (1997), the California Court of

23   Appeal for the Third Appellate District held that this language improperly allowed a conviction

24   of assault based on a finding of negligence as opposed to a finding of general intent and that the

25   error was prejudicial because it foreclosed the jury from considering the defense of lack of

26

intent.[4]  Subsequent to the <u>Smith</u> decision, and after petitioner's trial took place, CALJIC No. 9.00 was amended to add the following language: "The person committing the act was aware of facts that would lead a reasonable person to realize that as a direct, natural and probable result of this act that physical force would be applied to another person."

On direct appeal in state court, petitioner argued that the use of CALJIC No. 9.00 at his trial was error because it effectively removed the disputed element of intent from the jury's consideration.  (Answer, Ex. A at 15-17.)  He also argued that the error was reversible per se.  (<u>Id.</u>)  The California Court of Appeal agreed that the jury instruction was given in error but concluded that the error was harmless.  The court explained its reasoning as follows:

> Here, it was error to give CALJIC No. 9.00 not only for the reasons stated in <u>People v. Smith</u>, <u>supra</u>, 57 Cal.App.4th 1470, but also because the instruction had no application to [petitioner] on these facts.  However, in these circumstances the error was harmless.
>
> [Petitioner] was convicted as an aider and abettor rather than as a direct perpetrator, as was the case in <u>Smith</u>, <u>supra</u>, 57 Cal.App.4th 1470.[5]  [Petitioner's] defense was that he did not know Tanguileg intended to assault Tapia when they went to the latter's apartment, not that Tanguileg never intended to assault Tapia.  Hence, the erroneous portion of the instruction in no way hampered the jury from assessing this defense, as was the case in Smith.  The jury simply failed to believe [petitioner] in light of overwhelming evidence to the contrary.
>
> Citing <u>People v. Flood</u> (1998) 18 Cal.4th 470, [petitioner] contends the instructional error is not subject to harmless error analysis, but is reversible error per se.  This is so, he concludes, because Flood only held that the harmless error analysis applied to a failure to instruct on an undisputed element of the offense.  [Petitioner] misreads <u>Flood</u>.
>
> In <u>People v. Flood</u>, <u>supra</u>, 18 Cal.4th 470, the defendant was convicted of evading a pursuing police car resulting in serious

---

[4]  Pursuant to California law, assault with force likely to produce great bodily injury is a general intent crime.  <u>People v. Martinez</u>, 31 Cal.App.3d 355, 359 (1973).

[5]  In <u>Smith</u>, "the defendant was convicted of assault with a deadly weapon on a peace officer (§245, subd. (c)) based upon his driving his Porsche through a police checkpoint and striking an officer with his car.  The defendant testified he only drove forward when two officers motioned him to do so and he had no intention of hitting the officer."  (Opinion at 8.)

9

bodily injury (Veh. Code, § 2800.3).  An element of the offense was that the pursuing vehicle was operated by a "peace officer."  In giving instructions the court did not advise the jury it should determine whether the persons in the pursuing vehicle were peace officers, but instead informed the jury that the police officers in that vehicle were peace officers, thus effectively removing that element from the jury's consideration.  (Id. at p. 475.)

Regarding the standard to be applied in assessing the error, the Flood court stated: "[A]n instructional error that improperly describes or omits an element of an offense, or that raises an improper presumption or directs a finding or a partial verdict upon a particular element, generally is not a structural defect in the trial mechanism that defies harmless error review and automatically requires reversal under the federal Constitution.  Indeed, the high court never has held that an erroneous instruction affecting a single element of a crime will amount to structural error [citation], and the [United States Supreme Court's] most recent decisions suggest that such an error, like the vast majority of other constitutional errors, falls within the broad category of trial error subject to Chapman review."[6]  (People v. Flood, supra, 18 Cal.4th 470 at pp. 502-503.)

In applying the Chapman analysis, the Flood court observed that the error in that case had failed to contribute to the verdict because the element upon which the jury was misinstructed "effectively was conceded by defendant, was established by overwhelming, undisputed evidence in the record, and had nothing to do with defendant's own actions or mental state . . . ." (Id. at p. 507.)  Quite clearly, Flood did not hold, as [petitioner] claims, that the sine qua non for Chapman review is that the error affect only an undisputed element of the offense.

Here, since the error had nothing whatsoever to do with jury's (sic) assessment of the proffered defense, i.e., [petitioner's] mental state as an aider and abettor, the error was harmless beyond a reasonable doubt.

(Opinion at 9-11.)

The conclusion of the California Court of Appeal that the trial court erred as a matter of state law when it gave CALJIC 9.00 at petitioner's trial is not reviewable in this federal habeas corpus proceeding.  See Estelle, 502 U.S. at 67-68 (a federal writ is not available for

---

[6]  Chapman v. California (1967) 386 U.S. 18 at page 24 [17 L.Ed.2d 705, 710-711], holding the harmless error test is whether it appears beyond a reasonable doubt that the error complained of did not contribute to the resulting verdict.

1  alleged error in the interpretation or application of state law); Park v. California, 202 F.3d 1146,

2  1149 (9th Cir. 2000) (same).  The state court's conclusion that the error was subject to harmless

3  error analysis and was harmless under the facts of this case is not contrary to or an unreasonable

4  application of United States Supreme Court precedent and should not be set aside.[7]

5        Pursuant to California law, the mental state of a defendant charged with aiding

6  and abetting --his knowledge of another person's criminal purpose and his intent to encourage or

7  facilitate that purpose--is an element of the crime of aiding and abetting.  See, e.g., People v.

8  Mendoza, 18 Cal. 4th, 1114, 1133-34 (1998).  Petitioner's jury was correctly instructed on the

9  mental state required of an aider and abettor.  (CT at 218.)[8]  Petitioner's defense was that he did

10

11        [7] The state appellate court analyzed harmless error under Chapman, which is the
appropriate standard on direct review.  Chapman v. California, 386 U.S. 18, 24 (1967).  Prior to

12  the passage of the AEDPA, federal habeas courts reviewed state determinations of harmless error
pursuant to Brecht with the inquiry being whether an error "'had substantial and injurious effect

13  or influence in determining the jury's verdict.'"  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)
(quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).  After AEDPA, it is an open

14  question whether a federal habeas court analyzing a state court's harmless error finding should
continue to apply Brecht or determine instead whether the state court's decision was "contrary to,

15  or involved an unreasonable application of" Chapman.  28 U.S.C. § 2254(d)(1).  See e.g.
Mitchell v. Esparza, 540 U.S. 12 (2003) (per curiam) (Supreme Court not applying Brecht in

16  examining the harmlessness of constitutional errors on collateral review where the state explicitly
adjudicated a federal claim on Chapman harmless error grounds);  Medina v. Hornung, 386 F.3d

17  872, 878 (9th Cir. 2004) (upholding state court's harmless error analysis under Chapman without
referring to or applying Brecht); Picazo v. Alameida, 366 F.3d 971 (9th Cir. 2004) (applying

18  Brecht while observing that the Supreme Court in Esparza neither mentioned nor overruled
Brecht and its progeny).  See also Saiz v. Burnett, 296 F.3d 1008, 1012-13 (10th Cir. 2002)

19  (holding that if the state court correctly applied Chapman, federal courts do not apply Brecht
unless the state court's Chapman analysis violated AEDPA); Noble v. Kelly, 246 F.3d 93, 101

20  n.5 (2d Cir. 2001) (noting open question where state appellate court explicitly reviewed error for
harmlessness); Whitmore v. Kemna, 213 F.3d 431, 433 (8th Cir. 2000) (expressing doubt as to

21  whether Brecht survived AEDPA at all, but declining to decide the issue); Anderson v. Cowan,
227 F.3d 893, 898 n.3 (7th Cir. 2000) (noting the issue but declining to decide it).  Because this

22  court concludes the state trial court's error in this case was harmless under both possible
standards of review, the court will decline to decide which standard should govern.

23        [8] Specifically, petitioner's jury was instructed that:

24  A person aids and abets the commission of a crime when he or she,

25  1.  With knowledge of the unlawful purpose of the perpetrator and

26  2.  With the intent or purpose of committing or encouraging or facilitating the commission of the

1   not harbor the required mental state because he did not know or intend that Tapia would be the

2   victim of a vicious assault but only expected, at the most, that he would be the victim of a simple

3   battery.  Petitioner was not prevented from presenting this defense by CALJIC No. 9.00 or any

4   other jury instruction.  As noted by the state appellate court, CALJIC No. 9.00 "had nothing

5   whatsoever to do with [the] jury's assessment of the proffered defense, i.e., [petitioner's] mental

6   state as an aider and abettor."  (Opinion at 11.)  Rather, the instruction involved the intent of the

7   perpetrators themselves.  Because CALJIC No. 9.00 did not remove an element of the offense

8   charged against petitioner or prevent him from presenting his defense, the error in giving

9   CALJIC No. 9.00 did not violate petitioner's due process rights.  Accordingly, petitioner is not

10   entitled to relief on this claim.

11                   3.  Natural and Probable Consequence Doctrine

12          Petitioner's next claim is that application of the "natural and probable

13   consequences" doctrine to his case violated his Fourteenth Amendment due process rights

14   because it created an unconstitutional presumption which relieved the prosecution of its burden

15   to prove the element of intent beyond a reasonable doubt and allowed the jury to convict him

16   based on a mere negligence standard.  He explains his claim as follows:

17              The Court instructed the jury that it could convict petitioner so
               long as the assault with force likely to produce great bodily injury
18             was a natural and probable consequence of petitioner's original
               intent to aid and abet a simple battery.  This instruction, because it
19             defines an objective standard [of] culpability, acts as an
               irrebuttable presumption, and violates the 14th Amendment's
20

21   /////

22   /////

23   _____

24   crime, and

25   3.  By act or advice aids, promotes, encourages or instigates the commission of the crime.

26   (Id.)

requirement that the State prove every element of a criminal
offense beyond a reasonable doubt.

(Pet. at 6.)[9]  In state court, petitioner argued that the challenged instruction:

instructs the jury that: 1) if it finds that [petitioner] intended to aid
and abet a battery, and 2) if it finds that the assault with force likely
to produce great bodily injury was a natural and probable
consequence of that intended battery, then 3) [petitioner] must be
convicted as an aider and abettor notwithstanding his subjective
intent.  Thus, the instruction indirectly told the jury to presume that
[petitioner] would have the mental state of a 'reasonable person.'"

(Opinion at 11-12; Answer, Ex. A at 19-20.)  Put another way, petitioner argues that "the

instruction, because it defines an objective standard of culpability, acts as an irrebuttable

presumption."  (Id. at 11.)

---

[9]  Petitioner's jury received the following instruction:

One who aids and abets another in the commission of a crime or
crimes is not only guilty of that crime or those crimes, but is also
guilty of any other crime committed by a principal which is a
natural and probable consequence of the crime or crimes originally
aided and abetted.

If you find that the original crime that was planned was simple
Battery, in order to find the defendant guilty of the crimes of
assault with a deadly weapon or a means likely to produce great
bodily harm you must be satisfied beyond a reasonable doubt that:

1.  The crime or crimes of battery was committed;

2.  That the defendant aided and abetted that crime;

3.  That a co-principal in that crime committed the crime of
battery; and

4.  The crime of assault with a deadly weapon by means likely to
produce great bodily harm was a natural and probable consequence
fo the commission of the crime of battery.

If you find that the original plan was to commit an assault with a
deadly weapon or by means likely to produce great bodily harm,
then this instruction is not applicable.

(CT at 219.)

13

The California Court of Appeal rejected this claim on direct appeal, stating as follows:

> "'[A] defendant whose liability is predicated on his status as an aider and abettor need not have intended to encourage or facilitate the particular offense ultimately committed by the perpetrator.  His knowledge that an act which is criminal was intended, and his action taken with the intent that the act be encouraged or facilitated, are sufficient to impose liability on him for any reasonably foreseeable offense committed as a consequence by the perpetrator.  It is the intent to encourage and bring about conduct that is criminal, not the specific intent that is an element of the target offense, which . . . must be found by the jury.'" (People v. Prettyman (1996) 14 Cal.4th 248, 261, quoting People v. Croy, (1985) 41 Cal.3d 1, 12, fn. 5.)  Thus, it is immaterial whether [petitioner] subjectively intended that the ultimate offense be committed.

> Nor does the instruction create an irrebuttable presumption.  The instruction does no more than inform the jury what facts must be proven before they may convict him of assault by means of force likely to produce great bodily injury.  The instruction neither requires conviction nor does it preclude the jury from considering any potential defense, such as, for example, coercion (see § 26, subd. Six – relieving from criminal liability "[p]ersons (unless the crime be punishable with death) who committed the act or made the omission charged under threats or menaces sufficient to show that they had reasonable cause to and did believe their lives would be endangered if they refused.").

> As to [petitioner's] claim that the natural and probable consequence doctrine is unconstitutional because it permits conviction by a mere negligence standard, this is simply not the record upon which such a claim may be made.  "[O]ne to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional."  (United States v. Raines (1960) 363 U.S. 17, 21 [4 L.Ed.2d 524, 529]; People v. Auer (1991) 1 Cal.App.4th 1664, 1668.)

> Here, [petitioner's] liability was predicated upon his aiding and abetting Tanguileg in committing a battery on Tapia.  The record admits of no doubt that Tanguileg intended to commit a battery when the group arrived at Tapia's apartment.  Nor is there any possibility that Tapia's injuries were the result of a negligent act – the injuries resulted from Tapia's being intentionally beaten by four persons using their fists, feet and a metal bar.  Thus, we need

14

1        not consider whether [petitioner's] constitutional challenge might
2        have merit in some other circumstance.

3 (Opinion at 12-14.)

4        The state appellate court's interpretation and analysis of the "natural and probable

5 consequences" doctrine, a state court construct, may not be challenged in this federal habeas

6 corpus action.  State courts are "the ultimate expositors of state law," and this court is "bound by

7 the state's construction except when it appears that its interpretation is an obvious subterfuge to

8 evade the consideration of a federal issue."  Peltier v. Wright, 15 F.3d 860, 862 (1994) (quoting

9 Mullaney v. Wilbur, 421 U.S. 684, 691 (1975) (construing state court judgment)).  See also

10 Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir. 1989) (construing state statute); Melugin

11 v. Hames, 38 F.3d 1478, 1482 (9th Cir. 1994) (construing state criminal statute).  There is no

12 evidence of subterfuge here.   However, a "claim of error based upon a right not specifically

13 guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief

14 where its impact so infects the entire trial that the resulting conviction violates the defendant's

15 right to due process."  Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v.

16 Crist, 616 F.2d 1107 (9th Cir. 1980)).  See also Lisenba v. California, 314 U.S. 219, 236 (1941);

17 Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999).  In order to raise such a claim in a federal

18 habeas corpus petition, the "error alleged must have resulted in a complete miscarriage of

19 justice."  Hill v. United States, 368 U.S. 424, 428 (1962).

20        Petitioner has failed to demonstrate a due process violation.  As explained by the

21 state appellate court, the record reflects that petitioner and four other men entered Tapia's

22 apartment with the understanding that Tanguileg and the others would beat Tapia using their

23 hands and fists.  It was undisputed that petitioner failed to intervene at any time, including when

24 the perpetrators started beating Tapia with a metal bar.  Under these circumstances, petitioner's

25 conviction of aiding and abetting assault with force likely to produce great bodily injury does not

26 constitute a complete miscarriage of justice.

1    Petitioner has also failed to demonstrate that the jury instruction on "natural and

2  probable consequences" created an impermissible mandatory presumption of intent.  Federal due

3  process is violated by jury instructions which use mandatory presumptions to relieve the

4  prosecution's burden of proof on any element of the crime charged.  Francis v. Franklin, 471

5  U.S. 307, 314 (1985); see also Sandstrom v. Montana, 442 U.S. 510 (1979).  In general, "[a]

6  mandatory presumption instructs the jury that it must infer the presumed fact if . . . certain

7  predicate facts" are proved.  Francis, 471 U.S. at 314.  The due process clause is implicated

8  where the presumed fact is an element of the prosecution's case, because in that situation proof

9  of predicate facts will either remove the presumed element from the State's case altogether or

10  will shift the burden of persuasion on the presumed element to the defendant.  Id. at 317.  In

11  either case, such a presumption operates to relieve the State from its constitutional obligation to

12  prove beyond a reasonable doubt every essential element of the crime charged.  Id. at 313; In re

13  Winship, 397 U.S. at 364.

14    On the other hand, a permissive presumption allows, but does not require, the trier

15  of fact to infer the elemental fact from proof of the basic fact.  County Court of Ulster Cty. v.

16  Allen, 442 U.S. 149, 157 (1979).  In order for such a presumption to pass constitutional muster, it

17  must be said with substantial assurance that "the presumed fact is more likely than not to flow

18  from the proved fact on which it is made to depend."  Leary v. United States, 395 U.S. 6, 36

19  (1968).[10]  Similarly, there must be a "rational connection between the fact proved and the

20  ultimate fact presumed" -- a connection grounded in "common experience."  Tot v. United

21  States, 319 U.S. 463, 467-68 (1943).  However, notwithstanding the label ultimately placed on an

22  evidentiary presumption, the ultimate test of its constitutionality remains constant: "[t]he device

23  must not undermine the fact finder's responsibility at trial, based on evidence adduced by the

24

---

25    [10]  Although Leary involved analysis of a statutory presumption, "[t]he reasoning of the
statutory inference cases is applicable to analysis of common-law inferences."  Barnes v. United
26  States, 412 U.S. 837, 844 n.8 (1973).

1 State, to find the ultimate facts beyond a reasonable doubt." Ulster Cty., 442 U.S. at 156 (citing

2 In re Winship, 397 U.S. at 364).

3        As explained by the California Court of Appeal, the instruction on "natural and

4 probable consequences" did not instruct the jury that it must find a certain mental state if the

5 specified factors were proven.  Rather, the thrust of the instruction was that the jury could not

6 render a guilty verdict unless the specified factors were established.  In that sense, it did not

7 involve a presumption at all, either mandatory or permissive.  Even assuming the jury instruction

8 involved a presumption, the instruction merely allows, but does not require, the jurors to make a

9 guilty finding if they found the underlying factors true.  It did not instruct the jurors to infer intent

10 or any other element of the crime charged against petitioner.  Accordingly, the instruction did not

11 employ an impermissible mandatory presumption.  This court also notes that petitioner's jury

12 was instructed that a defendant could not be found guilty unless the prosecution proved him

13 guilty beyond a reasonable doubt.  (CT at 308.)  Accordingly, the instructions at petitioner's trial,

14 considered together, did not permit a rational juror to believe that intent could be found without

15 proof by the prosecution of all elements beyond a reasonable doubt.

16        Petitioner appears to be arguing that he was denied due process because the

17 instruction on "natural and probable consequences" allowed the jurors to convict him of assault

18 with force likely to produce great bodily injury even though they may have found that he did not

19 act with the requisite intent to aid and abet the assault.  However, the jury instructions belie that

20 assertion.  If the jury believed petitioner's testimony/defense, then it could not have found him

21 guilty of aiding and abetting assault under the instructions given.  The instructions required the

22 jury to find, among other elements, that petitioner: (1) had knowledge of Tanguileg's unlawful

23 purpose, (2) had intent to encourage or facilitate the commission of the crime, and (3) aided,

24 promoted or encouraged (by act or advice) the commission of the crime.  (CT at 218.)  Therefore,

25 the guilty verdict unambiguously indicates that the jury concluded petitioner intended to

26 encourage or facilitate the commission of the target crime.  See Solis v. Garcia, 219 F.3d 922,

927-28 (9th Cir. 2000).  In addition, as noted by the Court of Appeal, the facts of this case did

not give rise to a finding of negligence.  Accordingly, this court need not decide whether the

"natural and probable consequences" doctrine would have application to a case involving mere

negligence.  Raines, 363 U.S. at 21.

For all of the reasons explained above, the opinion of the California Court of

Appeal with regard to petitioner's claim of jury instruction error is not contrary to or an

unreasonable application of federal law, nor is it based on an unreasonable determination of the

facts of this case.  Accordingly, petitioner is not entitled to relief.

C. Cruel and Unusual Punishment

Petitioner's next claim is that his sentence of 25 years to life constitutes cruel and

unusual punishment, in violation of the Eighth Amendment.

Successful challenges in federal court to the proportionality of particular sentences

are "exceedingly rare."  Solem v. Helm, 463 U.S. 277, 289-90 (1983).  See also Ramirez v.

Castro, 365 F.3d 755, 775 (9th Cir. 2004).  "The Eighth Amendment does not require strict

proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are

'grossly disproportionate' to the crime."  Harmelin v. Michigan, 501 U.S. 957, 1001 (1991)

(Kennedy, J., concurring).  Thus, in recent years the United States Supreme Court has held that it

was not an unreasonable application of clearly established federal law for the California Court of

Appeal to affirm a sentence of two consecutive 25 year-to-life imprisonment terms for a petty

theft with a prior conviction involving theft of $150.00 worth of videotapes.  Andrade, 538 U.S.

at 75; see also Ewing v. California, 538 U.S. 11, 29 (2003) (holding that a sentence of 25 years-

to-life in prison imposed on a grand theft conviction involving the theft of three golf clubs from a

pro shop was not grossly disproportionate and did not violate the Eighth Amendment).

Moreover, because petitioner was sentenced as a recidivist under California's

Three Strikes law, "in weighing the gravity" of his offense for purposes of a proportionality

analysis, the court "must place on the scales not only his current felony," but also his criminal

1  history.  Ewing, 538 U.S. at 29.  See also Ramirez, 365 F.3d at 768.  This is not an extreme case

2  in which the petitioner's criminal history is comprised solely of non-violent offenses stemming

3  from a single, dated incident and guilty plea resulting in the imposition of only a one-year jail (as

4  opposed to prison) sentence.  See Ramirez, 365 F.3d at 768-69.  Rather, as the California Court

5  of Appeal noted, petitioner's four prior felonies were for residential burglary, "an extremely

6  serious offense."  (Opinion at 16.)

7          Although harsh, petitioner's sentence is not inconsistent with federal law as set

8  forth in the holdings of the United States Supreme Court noted above.  The sentence imposed

9  was within the statutory maximum for the offense committed by petitioner and was not grossly

10  disproportionate to the crime of conviction in light of his criminal history.  See Andrade, 538

11  U.S. at 77; Rios v. Garcia, 390 F.3d 1082, 1086 (9th Cir. 2004).  Accordingly, petitioner is not

12  entitled to relief on his Eighth Amendment claim.

13          D.  Ineffective Assistance of Counsel

14          Petitioner's final claim is that his trial counsel rendered ineffective assistance.

15  The Sixth Amendment guarantees the effective assistance of counsel.  The United States

16  Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland

17  v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of counsel, a

18  petitioner must first show that, considering all the circumstances, counsel's performance fell

19  below an objective standard of reasonableness.  See Strickland, 466 U.S. at  687-88.  After a

20  petitioner identifies the acts or omissions that are alleged not to have been the result of

21  reasonable professional judgment, the court must determine whether, in light of all the

22  circumstances, the identified acts or omissions were outside the wide range of professionally,

23  competent assistance.  Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).  In assessing an

24  ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's

25  performance falls within the 'wide range of professional assistance.'"  Kimmelman, 477 U.S. at

26  381 (quoting Strickland, 466 U.S. at 689).  There is in addition a strong presumption that counsel

1  "exercised acceptable professional judgment in all significant decisions made."  Hughes v. Borg,

2  898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

3        Second, a petitioner must establish that he was prejudiced by counsel's deficient

4  performance.  Strickland, 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable

5  probability that, but for counsel's unprofessional errors, the result of the proceeding would have

6  been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine

7  confidence in the outcome."  Id.  See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224

8  F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not determine whether counsel's

9  performance was deficient before examining the prejudice suffered by the defendant as a result of

10 the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of

11 lack of sufficient prejudice . . . that course should be followed."  Pizzuto v. Arave, 280 F.3d 949,

12 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

13       1.  Probation Report

14       Petitioner first argues that his counsel rendered ineffective assistance because of

15 his failure to ensure that the sentencing report was accurate.  He argues that: (1) the report

16 indicates that all defendants were members of a street gang but petitioner is not a gang member;

17 (2) the report erroneously indicates that an emergency room physician told a police officer that

18 the victim's injuries could have killed him, when in fact the physician testified the injuries were

19 not critical; (3) the report erroneously stated that the victim's hands were seriously injured and

20 that he lost a lot of blood, when neither of these statements is true; (4) the report failed to state

21 that petitioner was attending college at the time of the offense and had a good employment

22 history; (5) the report contained inaccurate, inflammatory comments, such as a statement that

23 petitioner's statements were "callous;" and (6) only one of the six circumstances in aggravation

24 was true and available mitigating circumstances were not mentioned.  (Pet. at 6a-6b.)

25       Petitioner has failed to demonstrate prejudice with respect to this claim.  Although

26 the probation report indicated that the victim identified petitioner and his co-defendants as gang

1  members, the report also stated that petitioner denied being a gang member.  (Probation report,

2  filed July 19, 2005, at 4.)  This ambiguous evidence would not have caused the trial judge to

3  sentence petitioner under the Three Strikes Law and, indeed, the record of the sentencing

4  proceedings reflects that petitioner's possible status as a gang member was not even mentioned at

5  the hearing.  (RT at 681-87.)  Defense counsel clarified at the sentencing hearing that the treating

6  physician testified the victim's injuries were not critical and that the victim did not "almost die."

7  (Id. at 681.)  Defense counsel also presented testimony at the sentencing hearing about

8  petitioner's education and employment history, the fact that he was active in church, and that he

9  had a fiancee.  (Id. at 668-77.)  Petitioner was permitted to read a statement to the court prior to

10 sentencing.  (Id. at 674-77.)  Petitioner does not specify the mitigating factors that should have

11 been argued by counsel or the aggravating factors that were untrue.  His vague assertions in this

12 regard are insufficient to substantiate a claim of ineffective assistance of counsel

13       It is true that a sentence founded upon misinformation of constitutional magnitude

14 must be set aside if knowledge of the true facts might have resulted in a different sentence.  See

15 United States v. Tucker, 404 U.S. 443, 447 (1972) (sentence reversed where the sentencing judge

16 gave specific consideration to two prior convictions that had been unconstitutionally obtained

17 and sentence might have been different if the sentencing judge had known the truth).  However,

18 any misinformation in petitioner's probation report was not of constitutional magnitude and was

19 corrected at the sentencing hearing in any event.  Further, the record reflects that petitioner's

20 sentence was based on the judge's view of the gravity of the crime and the fact that petitioner had

21 been on probation for only a short period before the crime took place.  (RT at 679-87.)  The

22 judge did not mention any of the factors raised by petitioner when he imposed sentence.

23 Accordingly, petitioner is not entitled to relief on this claim.

24       2. Sentencing

25       Petitioner also argues that his trial counsel rendered ineffective assistance when he

26 failed to ask the trial court at sentencing to reduce the charged offense to a misdemeanor pursuant

1  to Cal. Pen. Code § 17(b).  This claim was raised in a petition for writ of habeas corpus to the

2  California Supreme Court and summarily denied.  (Answer filed August 29, 2004, Ex. G at 21-

3  22, Ex. H.)

4       California Penal Code § 17(b) (b) provides, in pertinent part:

5      When a crime is punishable, in the discretion of the court, by
    imprisonment in the state prison or by fine or imprisonment in the
6      county jail, it is a misdemeanor for all purposes under the
    following circumstances:

7

8      (1) After a judgment imposing a punishment other than
    imprisonment in the state prison.

9  This code section authorizes the reduction of wobbler offenses, or crimes that in the trial court's

10  discretion may be sentenced alternatively as felonies or misdemeanors.  People v. Douglas, 79

11  Cal.App.4th 810, 812-813 (2000); People v. Superior Court (Alvarez), 14 Cal.4th 968, 974

12  (1997).  Petitioner was convicted of a violation of Cal. Pen. Code § 245(a)(1).  That code section

13  provides:

14      (a)(1) Any person who commits an assault upon the person of
    another with a deadly weapon or instrument other than a firearm or
15      by any means of force likely to produce great bodily injury shall be
    punished by imprisonment in the state prison for two, three, or four
16      years, or in a county jail for not exceeding one year, or by a fine
    not exceeding ten thousand dollars ($10,000), or by both the fine
17      and imprisonment.

18  Petitioner is apparently arguing that the trial judge had discretion pursuant to Cal. Pen. Code §

19  17(b)(1) to reduce his crime of conviction to a misdemeanor and sentence him to a punishment

20  other than imprisonment in the state prison.  He claims that his trial attorney was ineffective in

21  failing to request such a disposition at sentencing.

22      Petitioner has failed to show prejudice with respect to this claim.  To show

23  prejudice under Strickland from counsel's failure to file a motion, a defendant must show that:

24  (1) had his counsel filed the motion, it is reasonable that the trial court would have granted it as

25  meritorious, and (2) had the motion been granted, it is reasonable that there would have been an

26  outcome more favorable to him.  Kimmelman v. Morrison, 477 U.S. 365, 373-75 (1986).

Petitioner has failed to demonstrate that a motion to reduce the charges from a felony to a misdemeanor would have been granted.  As respondents point out, the sentencing judge considered at length whether to exercise his discretion to strike any of petitioner's prior convictions.  (RT at 683-85, 687.)  Although the judge expressed reservations over the fairness of sentencing petitioner to a Three Strikes sentence, he ultimately chose to do so after hearing the arguments of counsel and even after hearing the victim's statement that he did not believe petitioner should receive a life sentence.  (Id.)  (RT at 681-87.)  Under these circumstances, there is no reasonable possibility the court would have reduced the assault charge to a misdemeanor and sentenced petitioner to a term in county jail.  Accordingly, petitioner is not entitled to relief on this claim.  See Jones v. Smith, 231 F.3d 1227, 1239 n. 8 (9th Cir.2000) (an attorney's failure to make a meritless objection or motion does not constitute ineffective assistance of counsel (citing Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir.1985)); Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir.1996) ("the failure to take a futile action can never be deficient performance").

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised

/////
/////
/////
/////
/////

1  that failure to file objections within the specified time may waive the right to appeal the District

2  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3  DATED:  July 27, 2005.

4

5  _____

6  UNITED STATES MAGISTRATE JUDGE

7  008;shak1551.hc

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26